IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Case No.:  11-02958-jw

**ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT**

The relief set forth on the following pages, for a total of **19** pages including this page is hereby **ORDERED.**

**FILED BY THE COURT**
**07/06/2012**



_/s/ John E. Waites_
Chief US Bankruptcy Judge
District of South Carolina

Entered: 07/06/2012

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| In re:<br><br>Charles R. Ferguson, d/b/a The Meridian Company, a/k/a Charles R. Ferguson, Jr.,<br><br>Debtor. | Case No.  11-02958-jw<br><br>Chapter  11 |
|---|---|

**ORDER DENYING APPROVAL OF DISCLOSURE STATEMENT**

This matter comes before the Court upon the request of Charles R. Ferguson d/b/a The Meridian Company a/k/a Charles R. Ferguson, Jr. (the "Debtor") for approval of the Amended Disclosure Statement for Second Amended Chapter 11 Plan Dated April 27, 2012 as Revised on June 27, 2012 (the "Modified Disclosure Statement") pursuant to 11 U.S.C. § 1125.[1] The Modified Disclosure Statement is the fifth version of a disclosure statement proposed by the Debtor in this case.[2] Prior to the filing of the Modified Disclosure Statement, the United States Trustee; Bank of the Ozarks, as successor in interest to Woodlands Bank ("Ozarks"); and Harbourside Mortgage, a division of The Savannah Bank, N.A. ("Harbourside"), filed objections to the Second Amended Disclosure Statement (as defined below).  The Court conducted a hearing on the Disclosure Statement on June 25, 2012 (the "Hearing").  No evidence was presented at the Hearing.

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052 and 9014(c), and based upon the filings of the parties in this matter, the

---

[1] Further citations to sections of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*) shall be by the cited section number only.

[2] This number does not include the Debtor's first disclosure statement, which was withdrawn because of improper PDF attachments.

2

Debtor's filed schedules and statement of financial affairs, the arguments and statements of counsel at the hearing, and the Debtor's most recently filed plan and disclosure statement, the Court makes the following findings of fact and conclusions of law:[3]

## FINDINGS OF FACT

1. The Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 2, 2011 (the "Petition Date").

2. On May 27, 2011, Harbourside filed a motion for modification of the automatic stay pursuant to §§ 362(d)(1) and (2) (the "Harbourside Motion"). The Debtor's primary residence located at 100 Pap-Kee Lane, Seabrook, South Carolina ("Residence") was the subject of the Harbourside Motion. As set forth in the certification of facts in the Harbourside Motion, based on an appraisal performed in February 2010, the Residence was valued at $650,000. The Savannah Bank also filed a secured claim against the Debtor on behalf of Harbourside, amended as of June 25, 2012, in the amount of $645,014.63. The Debtor and Harbourside subsequently entered into a settlement order resolving the Harbourside Motion, which was entered by the Court on July 11, 2011 (the "Settlement Order"). Pursuant to the terms of the Settlement Order, the Debtor agreed to, among other things, continue making post-petition payments to Harbourside pursuant to the terms of the prepetition loan documents, maintain adequate insurance coverage on the Residence, and file a confirmable plan of reorganization by October 31, 2011 that provided for the cure of Harbourside's arrearage claim in full.

3. On June 1, 2011, Michael C. McChesney filed a motion for relief from the automatic stay pursuant to § 362(d) (the "McChesney Motion"). The property that was the subject of the McChesney Motion was .6 acres of property located in the Williman Island in

---

[3] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

3

Beaufort County, South Carolina ("Williman Property").[4] As set forth in the certification of facts attached to the McChesney Motion, the value of the Williman Property was $71,000. No objections to the McChesney Motion were filed, and, on June 24, 2011, the Court entered an order granting Mr. McChesney relief from the automatic stay with respect to the Williman Property. Mr. McChesney did not file a proof of claim in this case.

4. On August 9, 2011, Debtor's original attorney, Felix B. Clayton, withdrew as counsel for the Debtor. The Debtor subsequently filed an application to employ the Law Office of Michael W. Mogil, PA. as substitute bankruptcy counsel, which was approved on September 13, 2011.

5. On January 13, 2012, Ozarks filed a motion seeking (i) relief from the automatic stay pursuant to §§ 362(d)(1) and (2) regarding certain property located at 2735 Depot Road, Beaufort, South Carolina 29902 (the "Depot Road Property"), and (ii) a waiver of the 14-day stay of the order provided in Federal Rule of Bankruptcy Procedure 4001(a)(3) (the "Ozarks Motion").

6. On February 14, 2012, after filing two previous disclosure statements, the Debtor filed a modified version of the amended disclosure statement originally filed on January 31, 2012 (as modified, the "First Amended Disclosure Statement").

7. On February 22, 2012, after filing two previous plans of reorganization, the Debtor filed a modified version of the amended plan of reorganization originally filed on February 1, 2012 (as modified, the "First Amended Plan").

8. On February 23, 2012, the Court entered its order approving the adequacy of the First Amended Disclosure Statement.

---

[4] The Court notes that the Williman Property referred to in the Debtor's pleadings is referred to in the McChesney Motion as being located on "Big Williams Island." However, the tax map numbers provided in both the McChesney Motion and the Debtor's pleadings are the same.

4

9. On March 23, 2012, the United States Trustee filed a motion seeking to dismiss or convert this case, asserting the existence of cause under §1112(b)(4)(A) based on the Debtor's failure to propose a plan that was feasible and filed in good faith. The United States Trustee's motion was continued to the Hearing and was subsequently continued to the earlier of the Supplemental Hearing (as defined below) scheduled for July 10, 2012 or a confirmation hearing, if one was scheduled.

10. The Court held a confirmation hearing on the First Amended Plan on April 17, 2012. At the time of the hearing, six objections to the First Amended Plan were filed with the Court, and no class voted to accept the First Amended Plan. Seven classes voted to reject the First Amended Plan. The Court denied confirmation of the First Amended Plan, but granted the Debtor a ten-day extension to file an amended plan of reorganization.

11. On April 27, 2012, the Debtor filed the Second Amended Plan of Reorganization Dated April 27, 2012, Amending Plan Dated February 14, 2012 (the "Second Amended Plan") and the Disclosure Statement for Second Amended Chapter 11 Plan Dated April 27, 2012 (the "Second Amended Disclosure Statement").

12. Following a hearing on the Ozarks Motion on April 17, 2012, the Court entered an order on May 31, 2012 regarding the motion of Ozarks for relief from the stay regarding the Depot Road Property (the "362 Order"). The 362 Order conditionally denied Ozarks' request for relief without prejudice. In addition, the 362 Order scheduled a supplemental hearing for July 10, 2012 at 1:30 p.m. (the "Supplemental Hearing") and provided that, if the Debtor failed to obtain approval of the Second Amended Disclosure Statement, including any subsequent modifications prior to the Supplemental Hearing, such hearing would go forward and Ozarks' request for relief from stay would again be considered.

13. On June 19, 2012, the Debtor filed the Motion for Valuation of Secured Claims and Avoidance of Liens Pursuant to 11 U.S.C. § 506 and Federal Rule of Bankruptcy Procedure 3012 (the "Motion to Value").[5] The Motion to Value seeks to value the Williman Property at $140,000 and avoid liens of over $500,000.

14. The Court held a hearing on the adequacy of the Second Amended Disclosure Statement on June 25, 2012 (the "Hearing"). Prior to the Hearing, objections to the Second Amended Disclosure Statement were filed by the United States Trustee, Ozarks, and Harbourside. In addition, a reply to the Second Amended Disclosure Statement was filed by South Atlantic Forest Products, Inc. d/b/a Gaster Lumber and Hardware ("Gaster").

15. At the Hearing, the United States Trustee confirmed that he continued to object to the Second Amended Disclosure Statement on the basis that it contained deficient financial information.

16. At the Hearing, Ozarks raised a number of objections to the Second Amended Disclosure Statement, including (i) the inadequacy of exhibits related to total income, gross profit, net income, and property to be retained; (ii) inadequate disclosure regarding the cure payments and tax payments related to Harbourside; and (iii) that the Second Amended Plan was patently unconfirmable because (a) it was not feasible; (b) it unfairly discriminated and was not fair and equitable, including that it violated the absolute priority rule; and (c) it was not filed in good faith.

17. In response to the objection of the United States Trustee, Debtor's counsel indicated that either such objection would be resolved or a modification would be made to the Second Amended Disclosure Statement to reflect the specific objections of the United States

---

[5] The Debtor originally filed a similar motion on June 15, 2012 on passive notice, but at the request of the Court, refiled the motion without passive notice.

6

Trustee. In addition, counsel for the Debtor stated that, even if Ozarks voted against the Second Amended Plan, the Debtor hoped to have sufficient votes both in number and amount for Class 10, the class comprised of unsecured creditors, to vote in favor of the plan.

18. At the Hearing, counsel for the Debtor and Harbourside announced that both parties reached a settlement regarding the Harbourside objection and that such settlement would be reflected in an amendment to the Second Amended Disclosure Statement and the Second Amended Plan. The terms of the settlement were not announced at the Hearing and, according to the terms of the Modified Disclosure Statement, the terms of the settlement were not final at the time the Debtor filed the Modified Disclosure Statement. Therefore, the Court recognizes that the objection filed by Harbourside is still outstanding.

19. Based on the representations of the parties at the Hearing, the Court took the matter of considering whether the Second Modified Disclosure Statement should be approved under advisement. However, the Court directed the Debtor to modify the Second Amended Disclosure Statement to the extent any of the previously filed objections had been or could be resolved and file the modified copy with the Court.

20. On June 27, 2012, the Debtor filed Debtor's Second Amended Plan of reorganization Dated April 27, 2012, as Revised on June 27, 2012 (the "Modified Plan") and the Modified Disclosure Statement.

## **CONCLUSIONS OF LAW**

Section 1125 of the Bankruptcy Code provides that a court may approve a disclosure statement only if it provides holders of impaired claims with "adequate information" so that "a hypothetical investor typical of the holders of claims or interests in the case can make an informed decision on whether they should support a proposed chapter 11 plan. Specifically,

section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ."

§ 1125(a)(1). The standard for determining whether a plan proponent, in this case, the Debtor, has provided the "adequate information" to creditors and parties in interest required under § 1125 is whether "hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take." In re Applegate Prop., Ltd., 133 B.R. 827, 831 (W.D. Tex. 1991); see also Nelson v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.), 216 B.R. 175, 180 (Bankr. E.D. Va. 1997) (adequate disclosure "is designed to provide information to creditors to permit them to determine whether to vote for or against the plan . . . It plays a pivotal role in the give and take among creditors and between creditors and the debtor that leads to a confirmed negotiated plan of reorganization by requiring adequate disclosure to the parties so they can make their own decisions on the plan's acceptability"); In re United States Brass Corp., 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) ("The purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives").

Furthermore, the legislative history to section 1125 of the Bankruptcy Code provides that "the disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders would make an informed judgment about a plan of

reorganization." In re Jeppson, 66 B.R. 269, 291 (Bankr. D. Utah 1986). Additionally, Judge Davis previously recognized the importance of a disclosure statement, noting that

> "[t]he preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor. It is relied on by both the creditors of the debtor before they vote on the plan of reorganization, and by the bankruptcy court before approving it. Given this reliance, it is crucial that a debtor be absolutely truthful so that the disclosure statement meets the Code standard in § 1125…."

In re Point Wylie Co., 78 B.R. 453, 460 n.6 (Bankr. D.S.C. 1987) (internal citations omitted) (quoting In re Galeries Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985); see also In re Readco Props., Inc., 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009 ("[T]he importance of full and honest disclosure is critical and cannot be overstated"). In this case, at the Hearing, the Debtor's counsel himself pointed to the criticality of voting, particularly the voting of the unsecured creditor class as determinative of confirmation.

It is within the Court's discretion to determine whether a disclosure statement contains adequate information. See Menard–Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 696 (4th Cir.1989) ("The determination of whether the disclosure statement has adequate information is made on a case by case basis and is largely within the discretion of the bankruptcy court."). In this District, one of the factors considered by the Court is whether the disclosure statement at issue satisfies the Operating Guidelines and Reporting Requirements of the United States Trustee for the District of South Carolina (the "Trustee Guidelines"), which appear reasonable and are published to debtors in advance. The Trustee Guidelines expressly provide that "[a] disclosure statement should contain adequate information to allow creditors to make an informed decision as to whether the confirmation of the plan is in their best interests. The disclosure statement should be meaningful and easily understood." In addition, the UST Guidelines set forth a non-exhaustive list of the type of information that should be included in a

disclosure statement, including the following:

1. The necessary financial information, data, and projections relevant to the creditors' decision to accept or reject the Chapter 11 plan.
2. The assets and liabilities of the business. Provide current balance sheet information and the source of appraisal values.
3. A list of all claims against the debtor, if practicable, showing the claims to which objections are anticipated and the reason for the objections. A list of claims to be recognized under the plan.
4. A detailed estimate of the administrative expenses contemplated under the plan, including, but not limited to, attorneys' fees, accountant's fees and other professional fees and expenses. This includes quarterly fees to the UST.
5. The impaired classes under the plan. Include a layman's definition of impairment.

See Trustee Guidelines at pp. 9-10; see also In re Scioto Valley Mortgage Co., 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (sets forth list of 19 non-exclusive of types of information that should be included in a disclosure statement, which is very similar to the list set forth in the Trustee Guidelines).

For the reasons set forth below, the Court finds that the Disclosure Statement fails to provide "adequate information" as required by § 1125 and cannot be approved at this time.

a.  Disposable Income and the Property to be Retained under the Modified Plan

The purpose of a disclosure statement is to allow creditors to make an informed judgment about a plan of reorganization, particularly those creditors that do not participate in settlement negotiations with a debtor and likely to vote on a proposed plan of reorganization. Where unsecured creditors are not being paid in full and a debtor plans to retain non-exempt property, the disclosure statement should provide adequate disclosures as to the reasons why the debtor should be allowed to retain such property. Without such information, creditors, particularly unsecured creditors, cannot make an informed decision.

Upon the objection of a creditor holding an allowed secured claim to a plan of reorganization, § 1129(a)(15) creates an additional obligation of disclosure that the Debtor, as an

10

individual debtor under Chapter 11, must satisfy. Section 1129(a)(15) provides, in relevant part, that, upon the objection of a creditor holding an allowed unsecured claim, if such claim is not paid in full, the value of the property to be distributed under the plan cannot be "less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the five year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer." To determine projected disposable income available to pay creditors, the Court must reasonably examine the Debtor's current income and reasonably necessary expenditures. See In re Edmunds, 350 B.R. 636 (Bankr. D.S.C. 2006); see also Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 467.1, Sec. Rev. Sept. 7, 2010, www.Ch13online.com.

At the Hearing, Ozarks raised several issues regarding certain unencumbered property listed on the Debtor's schedules. In particular, Ozarks noted that the Second Disclosure Statement was "completely silent as to what the Debtor intends to do with various unencumbered pieces of personal property he owns such as the two recreational boats he listed in his schedules valued at $19,000 or his Zeto[r] tractor which he lists has a value of $5,000." Ozarks also raised the issue of the Debtor retaining a "67% interest in a fishing camp property on Big Williman Island, Beaufort County, South Carolina." In addition, the Court notes that the Modified Plan also proposes that the Debtor retain his interest in a $20,000 inheritance for purposes of funding the Modified Plan and working capital for his business operations without any indication of apportionment between plan funding and working capital. Ozarks also noted that the Debtor's payments to Mr. McChesney for the purpose of retaining his interest in the Williman Property "erode[d] the disposable income that otherwise should be paid to unsecured creditors as required by section 1129(a)(15)."

Ozarks holds several claims against the Debtor, including a partially secured claim in the amount of $300,000 and an unsecured deficiency claim. Based on the representations made by Ozarks' counsel throughout this case, including the statements made both at the various hearings and in Ozarks' objections to the Debtor's various plans and disclosure statements, Ozarks will not vote in favor of the Modified Plan and will likely raise several objections to the Modified Plan, many of which were foreshadowed in its recent objection to the Second Amended Disclosure Statement, which will trigger the requirements of § 1129(a)(15). [6]

In response to the concerns of Ozarks, at the Hearing, the Debtor's counsel stated that the majority of the property at issue either belonged to his wife or had no value. However, with respect to the fishing camp property, Debtor's counsel indicated that the Debtor planned to use such property at the time of his retirement. At the Hearing, the Court made an express recommendation that any modifications to the Second Disclosure Statement should include, among other things, the Debtor's reason for retaining property and evidence, either through timely amendments to the bankruptcy schedules or the attachment of title certificates, to demonstrate that the Debtor does not hold an interest in the property addressed in the objections raised by Ozarks.[7]

Creditors are entitled to know the reasons why the costs of retaining retirement property should be borne by unsecured creditors when the Debtor's Modified Plan will not pay their

---

[6] The Modified Disclosure Statement makes reference to a Share Loss Agreement between Ozarks and the Federal Deposit Insurance Corporation and argues that Ozarks' vote on the Modified Plan is motivated by its desire to establish an insurance loss, not increasing its recovery as a creditor in the Chapter 11 process, and, thus, Ozarks has acted in bad faith. This issue was previously raised during the hearing on the Ozarks Motion. Until the Debtor provides legal support for this position, either in a motion to disallow Ozarks' vote or an objection to Ozarks' claim, the Court cannot give any weight to this argument. Furthermore, the Court must note that the Debtor has had ample time to file either of the previously discussed pleadings, but has not.

[7] The Court recognizes that the Debtor filed an amendment to Schedule B on June 27, 2012 that kept the property in question on the Debtor's schedules, but amended the value of such property to $0.00. However, the Court believes that the proper method for addressing its concerns would have been to remove the property interests completely. Based on the Debtor's most recent amendments to Schedule B, the Court remains uncertain as to whether the Debtor asserts an interest in the property in question or not.

claims in full, particularly when the Debtor's income is being used to pay the costs of retaining such property. However, the Modified Disclosure Statement does not include any justification for the Debtor's retention of his interest in the Williman Property, which the Court specifically addressed at the Hearing, or any indication that the Modified Plan satisfies the disposable income requirements of an individual Chapter 11 debtor set forth under § 1129(a)(15). Therefore, the Court finds that the Disclosure Statement does not contain adequate information that would allow creditors to make an informed judgment about the Modified Plan and determine whether to vote in favor of or against the same.

b.     Valuation of the Debtor's Residence and Claims Related Thereto

A disclosure statement should include the source of the value property addressed in a plan of reorganization or some form of factual basis for such value. Furthermore, if a debtor significantly modifies the value of such property, either from a value previously used in the bankruptcy schedules or prior pleadings filed in the case, the debtor should also include an explanation regarding the change in value. A disclosure statement should also provide adequate information regarding the basis for treatment of creditors pursuant to a plan of reorganization. In certain respects, the Modified Disclosure Statement does neither.

In previously filed versions of the Debtor's plan and disclosure statement, the Debtor valued his personal residence located at 100 Pap Kee Lane in Seabrook, South Carolina at $610,000 and proposed to pay Harbourside the sum of approximately $611,484.98 plus arrearages of $21,000. Harbourside, the holder of the first mortgage on the Residence, has consistently valued the Residence at $650,000 based on an appraisal completed in February 2010. However, in both the Modified Plan and the Modified Disclosure Statement, the Debtor valued the Residence at $690,000, which represents an increase of $80,000 from the Debtor's

13

previously valuation and $40,000 from Harbourside's previous valuation of the Residence. In addition, the Modified Plan now proposes to pay Harbourside $645,041.63 plus an arrearage of $70,448.64.[8] Since property values have more commonly trended downwards between 2010 and present date, the Court finds such that a significant increase in the value of the Residence requires explanation.

In its objection to the Second Amended Disclosure Statement and at the Hearing, Ozarks also raised the issue of the Debtor's proposed treatment of First Citizens Bank under the Second Amended Plan in light of the Debtor's valuation of the Residence. Under both the Second Amended Plan and the Modified Plan, the Debtor proposes to pay First Citizens Bank $40,000 of its total claim of approximately $127,000 as a secured claim. As noted above, nothing in the Modified Disclosure Statement or the Modified Plan provides a sufficient explanation as to the increased value in the Residence. Therefore, assuming, without deciding, that the value of the Residence is at most $650,000, the Modified Disclosure Statement does not contain adequate information addressing why First Citizens Bank, which appears to hold a secured claim of less than $10,000 and a remaining deficiency claim of approximately $118,000, is entitled to be paid $40,000 under the Modified Plan when it appears that the majority of such claim should be treated as a general unsecured claim.

Creditors should not have to guess why the value of the Residence has suddenly increased or why a creditor in the position of First Citizens Bank is entitled to receive the treatment proposed under the Modified Plan. It is the responsibility of the Debtor to provide

---

[8] According to the Modified Disclosure Statement, the Debtor will pay Harbourside's claim of $645,041.63 through the Modified Plan and an arrearage of $70,448.64 outside the term of the Modified Plan. However, based on the Court's review of the proof of claim filed on behalf of Harbourside, it appears that a portion, if not all, of the arrearage claim is already included in Harbourside's claim for $645,041.63. Although this issue does not change the Court's analysis and disapproval of the Modified Disclosure Statement, it raises additional question as to the adequacy of the information contained therein.

such information. In the absence of any explanation regarding both the sudden increase in value of the Debtor's personal residence, whether in the form of a more recent appraisal that supports this newly disclosed value of the Residence or a motion to establish the value of the Residence, and the Debtor's proposed treatment of First Citizens Bank under the Modified Plan, the Court finds that the Modified Disclosure Statement does not contain adequate information.

c. <u>Treatment of Michael McChesney and the Valuation of the Williman Property</u>

The Ozarks Objection also raised the issue of the proposed treatment of Michael McChesney under the Second Amended Plan as well as the Debtor's proposed valuation of the Williman Property.

Both the Second Amended Plan and the Modified Plan propose to pay Mr. McChesney, a creditor that did not file a proof of claim, a total of $158,000, which includes unpaid interest and other charges of $18,000. In addition, the Debtor proposes to convey 33 1/3% of his interest in the Williman Property to Mr. McChesney within 30 days of the entry of an order on the Debtor's motion to value, among other things, Mr. McChesney's secured claim.

Based on the Debtor's bankruptcy schedules, the Williman Property had a value of $71,000. In addition, the certification of facts attached to Mr. McChesney's motion for relief from stay, which was unopposed by the Debtor and granted on June 24, 2011, provided a value of $71,000 for the Williman Property. However, both the Modified Plan and the Modified Disclosure Statement now provide a value of $140,000 for the Williman Property, nearly doubling the previously stated value. The Debtor has also filed a motion to value the secured claim of McChesney, which seeks to value the Williman Property at $140,000.

As previously noted, in order to properly evaluate Mr. McChesney's proposed treatment under the Modified Plan, the Disclosure Statement should provide adequate information

15

regarding the basis for Mr. McChesney's treatment. The Modified Disclosure Statement does not. Instead, the Modified Disclosure Statement raises serious issues concerning the value of the Williman Property, particularly because both the Debtor and Mr. McChesney previously valued such property at $71,000 throughout this case and are now seeking to value it at $140,000 without any explanation. Even if the Court were to adopt the revised value of the Williman Property at $140,000, the Modified Disclosure Statement provides no explanation as to why an undersecured creditor should be entitled to treatment as a fully secured creditor and receive payment of his claim in full, including unpaid interests and legal fees.

Again, creditors voting on the Modified Plan should not be required to guess regarding this discrepancy. If anything, the treatment of Mr. McChesney under the Modified Plan raises questions about the relationship between the Debtor and Mr. McChesney, particularly in light of the fact that Mr. McChesney has not filed a proof of claim in this case and received prior relief from stay by the Debtor's default. Without further explanation regarding both the treatment of holders of Class 8 claims under the Modified Plan and the new value attributed to the Williman Property, the Court finds that the Modified Disclosure Statement fails to provide adequate information.

d.  Financial Inconsistencies

In order to satisfy the requirements of adequate information under § 1125, a disclosure statement must contain the necessary financial information, data, and projections relevant to the creditors' decision to accept or reject the Chapter 11 plan. Although the Debtor has included additional financial information in the Modified Plan, the Court notes that the Debtor's exhibits fail to include any projections relating to the future tax liability of either the Debtor or his business. Given the issues that were previously raised in the Ozarks Motion related to the

Debtor's payment of property taxes, the Court finds that the absence of such information raises issues regarding the accuracy of the financial information contained in the Modified Disclosure Statement. Based on the information contained therein, the Court finds that the Modified Disclosure Statement does not contain the sufficient financial information necessary to satisfy the requirements of adequate information under § 1125.

e.    Absolute Priority Rule

Section 1129(b)(2)(B)(ii), known as the "absolute priority rule," provides in relevant part:

> For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
> (B) with respect to a class of unsecured claims –
>> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

§ 1129(b)(2)(B)(ii). In brief, the absolute priority rule provides that if a purposed plan allows "the debtor to retain property, any dissenting [class of] creditors must be paid in full in order for the plan to be 'crammed down.'" In re Maharaj, 681 F.3d 558, 562 (4th Cir. 2012) (citing Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988)). Although there is a debate amongst several bankruptcy courts regarding whether the absolute priority rule applies to an individual debtor under Chapter 11, the Court is bound by the recent ruling by the United States Court of Appeals for the Fourth Circuit in In re Maharaj, which held that the absolute priority rule continues to apply to individual debtors in possession proceeding under Chapter 11. Id. at 560.

At the Hearing, counsel for the Debtor claimed that it may be possible for Class 10,

17

which is comprised of unsecured creditors, to vote in favor of the Second Amended Plan regardless of the vote of Ozarks, obviating the need for an analysis of whether the absolute priority rule is satisfied. Based on the terms of the Modified Disclosure Statement and the representations made by Ozarks' counsel throughout this case, the Court finds that it is unlikely that Class 10 can vote in favor of the Modified Plan as a class without the support of Ozarks. Both the Second Amended Disclosure Statement and the Modified Disclosure Statement set forth the total amount of outstanding unsecured claims against the Debtor as $4,347,159.00, and, of that amount, Ozarks holds an unsecured claim of at least $2,168,384.00.[9] Based on the representations made by counsel for Ozarks at the Hearing as well as in the Ozarks Objection and the Addendum to the Ozarks Objection, it is clear that Ozarks will not support the Modified Plan. Therefore, it presently appears that Ozarks would control the vote of Class 10 and, thus, would likely vote against the Modified Plan, which would require use of cramdown pursuant to § 1129(b) and invoke the absolute priority rule.

In light of the apparent "blocking position" held by Ozarks and the Debtor's plan to retain property when unsecured creditors are not being paid in full, the Second Amended Disclosure Statement should have included a discussion of the absolute priority rule and an explanation as to why the Debtor believes that Second Amended Plan satisfied the absolute priority rule. Unfortunately, neither the Second Amended Disclosure Statement nor the Modified Disclosure Statement includes such information. Therefore, based on the Court's review of the Modified Disclosure Statement and the recent decision in <u>Maharaj</u>, the Court finds that the Modified Disclosure Statement does not provide adequate information with respect to

---

[9] Both Schedule F of the Debtor's bankruptcy schedules and the Modified Disclosure Statement include an unsecured claim held by Ozarks in the amount of $2,168,384.

18

the absolute priority rule.[10]

## CONCLUSION

A disclosure statement is more than merely a ministerial task that precedes a confirmation hearing that can be updated at any time. The Modified Disclosure Statement does not meet the requirements of §1125. Therefore, for the foregoing reasons, the approval of the Disclosure Statement is denied.

**AND IT IS SO ORDERED.**

---

[10] The Court recognizes that the objection of Ozarks to the Second Amended Disclosure Statement also raised several issues regarding whether the Second Amended Plan is patently unconfirmable. Based upon the foregoing, the Court need not address such issues at this time.